# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **EDDIE WILLIAMS** | **CIVIL ACTION** |
| **versus** | **NO. 12-1112** |
| **BURL CAIN, WARDEN** | **SECTION: "G" (3)** |

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Eddie Williams, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana. On June 18, 2008, he was convicted of aggravated rape under Louisiana law.[1] On June 25, 2008, he was sentenced to a term of life imprisonment without benefit of parole, probation, or suspension of sentence.[2] On October 27, 2009, the Louisiana Fifth Circuit

---

[1] State Rec., Vol. VI of VII, transcript of June 18, 2008, at p. 96; State Rec., Vol. I of VII, minute entry dated June 18, 2008; State Rec., Vol. I of VII, jury verdict form.

[2] State Rec., Vol. VI of VII, transcript of June 25, 2008; State Rec., Vol. I of VII, minute entry dated June 25, 2008.

Court of Appeal affirmed that conviction and sentence.[3]  Petitioner's related writ application was then denied by the Louisiana Supreme Court on May 7, 2010.[4]

On May 3, 2011, petitioner, through counsel, filed an application for post-conviction relief with the state district court.[5]  That application was denied on August 24, 2011.[6]  Petitioner's related writ applications were then denied by the Louisiana Fifth Circuit Court of Appeal on February 27, 2011,[7] and by the Louisiana Supreme Court on June 15, 2012.[8]

In the interim, on April 26, 2012, petitioner filed the instant federal application for *habeas corpus* relief.[9]  In support of his application, he asserts the following claims:

1.    Petitioner's rights were violated by the improper admission

of evidence of prior bad acts; and

2.    Petitioner received ineffective assistance of counsel.

In its response, the state conceded that the application was timely but argued that petitioner's remedies in state court were not yet exhausted because his post-conviction writ

---

[3] State v. Williams, 28 So.3d 357 (La. App. 5th Cir. 2009) (No. 09-KA-48); State Rec., Vol. I of VII.

[4] State v. Williams, 34 So.3d 860 (La. 2010) (No. 2009-K-2565).

[5] State Rec., Vol. II of VII.

[6] State Rec., Vol. II of VII, Order dated August 24, 2011.

[7] State v. Williams, No. 11-KH-1110 (La. App. 5th Cir. Feb. 27, 2011); State Rec., Vol. II of VII.

[8] State v. Williams, 90 So.3d 1061 (La. 2012) (No. 2012-KP-0698).

[9] Rec. Doc. 1.

application was still pending before the Louisiana Supreme Court.[10]  However, shortly after the

state's response was filed, the Louisiana Supreme Court denied petitioner's writ application on June

15, 2012.[11]  Therefore, the exhaustion requirement has now been satisfied, and this Court will

address petitioner's claims.

## I.  Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254.

Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of

fact, pure questions of law, and mixed questions of both.  The amendments "modified a federal

habeas court's role in reviewing state prisoner applications in order to prevent federal habeas

'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."

Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal

court will give deference to the state court's decision unless it "was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding."  28

U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application

for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a

determination of a factual issue made by a State court shall be presumed to be correct.  The applicant

---

[10]  Rec. Doc. 5.

[11]  State v. Williams, 90 So.3d 1061 (La. 2012) (No. 2012-KP-0698).

shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir.) (internal quotation marks, ellipses, brackets, and footnotes omitted), cert. denied, 131 S.Ct. 294 (2010).

Regarding the "unreasonable application" clause, the United States Supreme Court has explained:

> [A] state-court decision can involve an "unreasonable application" of this Court's clearly established precedent in two ways. First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the

facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

Williams v. Taylor, 529 U.S. 362, 407 (2000). The Supreme Court has noted that the focus of this inquiry "is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in <u>Williams</u> that an unreasonable application is different from an incorrect one." <u>Bell</u>, 535 U.S. at 694; <u>see also</u> <u>Puckett v. Epps</u>, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."), <u>cert. denied</u>, 132 S.Ct. 1537 (2012).

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court recently held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
>
> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 131 S.Ct. 770, 786-87 (2011) (citations omitted; emphasis added).

## II. Facts

On direct appeal, the Louisiana Fifth Circuit Court of Appeal summarized the facts

of the instant case as follows:

> K.S., the victim, testified at trial that before Hurricane Katrina, she was living with her mother F.S. and the defendant. Her sister Ke. S. also lived nearby. According to K.S. the defendant "took down her pants" one day and started "licking" her and "biting" her on her "nu-nu" and her "butt." K.S. indicated that her "nu-nu" is the "place where the pee-pee comes out." K.S. denied seeing the defendant's penis. K.S. additionally denied that the defendant ever rubbed his penis against her.
>
> K.S. testified that the defendant told her if she told her mother F.S. what had happened, he would kill F.S. K.S. indicated that she was scared of the defendant. After the first incident, the defendant "took down [K.S.'s] pants" a second time. K.S. testified that the defendant "started doing the same stuff." Shortly thereafter, K.S. indicated that F.S. found her "in the bed with [the defendant]." F.S. and K.S. went to Ke. S.'s home and called the police. On cross-examination, K.S. testified that the first person that she told what had happened was F.S., and that the second person that she told what had happened was Ke. S.
>
> F.S. testified that on July 8, 2005, she was living with the defendant and K.S. At approximately 4:30 in the morning, F.S. woke up and noticed that her apartment was completely dark, which she indicated was unusual because she usually kept the TV and a bathroom light on at night. She went to K.S.'s room and turned on the light. According to F.S., K.S. was "half naked" and the defendant was "butt naked." F.S. testified that she saw the defendant "licking" and "eating" on K.S.'s "bottom." F.S. hit the defendant on the head with a nearby stick, wrapped K.S. in a sheet or towel, and left her apartment. K.S. and F.S. arrived at Ke. S.'s apartment and thereafter called the police. On cross-examination, F.S. admitted that she and the defendant fought and argued often and that she and the defendant had been consuming alcohol the night of July 7, 2005.
>
> Ke. S. testified that on the morning of July 8, 2005, she was living down the street from K.S. and F.S. At approximately 5:00 AM, F.S. started banging on Ke. S.'s door. Ke. S.'s fiancé opened the door and let K.S. and F.S. into Ke. S.'s house. K.S. was crying at the time. Ke. S. took K.S. upstairs. The trial court allowed Ke. S.

to testify about the conversation she had with K.S., over the defendant's objection. According to Ke. S., K.S. told her that the defendant "licked on her noonie and her bootie." K.S. did not indicate that the defendant had licked her or bitten her on more than one occasion.

Deputy Brian Brinser of the Jefferson Parish Sheriff's Office testified that he responded to F.S.'s call. At the time, F.S. was "very frantic, very angry." According to Deputy Brinser, K.S. seemed "scared" and "confused." Deputy Brinser was familiar with the defendant because he had dealt with him previously. Deputy Brinser located the defendant talking on a pay phone at a local Shell station. He identified himself and the defendant hung up the phone. Deputy Brinser then arrested the defendant and advised him of his rights.

K.S. was taken to the Ambulatory Care Center at Children's Hospital later that day, where a rape kit was collected. Dr. Scott Benton testified that Dr. Monica Weiner examined K.S. and took a history from her at Children's Hospital. K.S. indicated to Dr. Weiner that the defendant "licked her in the booty and nu-nu." Dr. Benton testified there was nothing found during the physical exam that invalidated the history K.S. gave to Dr. Weiner. Dr. Benton additionally testified that neither he nor Dr. Weiner collected evidence for the rape kit. Karen Bourne, a nurse at Children's Hospital, testified that she collected evidence for the rape kit. The rape kit included samples of K.S.'s blood, saliva, and hair, as well as fingernail, navel, genital, and anal swabs.

Gina Pineda testified for the state as an expert in the field of forensic science and DNA analysis, to which the defendant had no objection. Pineda testified that she prepared a report in conjunction with the instant case. Pineda additionally testified that male DNA was recovered from K.S.'s genitals and gluteal cleft. Pineda reviewed the DNA evidence that had been submitted with the rape kit. After reviewing the DNA, Pineda concluded that the defendant "[could not] be excluded as being a donor to the male DNA in the dried secretions and genital swabbing."

Omalee Gordon of the Gretna Police Department's Child Advocacy Center testified that she interviewed K.S. approximately two weeks after the incident. The jury viewed the videotape of Gordon's interview with K.S. During the interview, K.S. stated that defendant licked and bit her on her "bootie" and her "nu-nu." Gordon asked K.S. where her "nu-nu" was. K.S. responded by pointing to her vaginal area.

The final witness to testify was A.D., one of the women referred to in the Notice of Intent. A.D. testified that when she was thirteen, a man came to her door and told her that he was selling carpet cleaning products. She told the man that she was home alone. Eventually, A.D. took the man to her basement, where she recalled that there were stains on the carpet. The man squirted the stain on the carpet and told A.D. to put her foot on the stain. The man then told her to "put her hips into it," then grabbed her hips and "moved them around." Afterwards, the man "colored" on A.D.'s shirt and "put his hand underneath it and tried to scrub that out." According to A.D., the man told her that "if you were my girlfriend, I'd lick you up." A.D. became uncomfortable and asked the man to leave. After the man left, A.D. rode her bicycle to her friend's house. While she was riding home, A.D. noticed that the man was sitting at the top of her street in handcuffs.

At trial, A.D. did not identify the defendant as the man who was selling cleaning products. A.D. was never specifically asked at trial whether the defendant was the man who had assaulted her fifteen years prior. The prosecutor asked A.D. if "the complexion of the person who was in your home, is it consistent with the person who sits here in the courtroom," to which A.D. replied, "yes."

The defendant did not testify at trial.[12]

## III. Petitioner's Claims

### A. Improper Admission of Evidence of Prior Bad Acts

Petitioner's first claim is that his rights were violated by the improper admission of evidence of prior bad acts. On direct appeal, the Louisiana Fifth Circuit Court of Appeal rejected that claim, holding:

> [T]he defendant claims that the trial court erred in allowing A.D.'s testimony. The defendant contends that the testimony given by A.D. was irrelevant, that the prejudicial effect of the evidence outweighed its probative value, and that the limiting instruction given by the trial court was improper. The state contends that A.D.'s testimony was

---

[12] <u>Williams</u>, 28 So.3d at 361-363; State Rec., Vol. I of VII.

admissible to show the defendant's "lustful disposition towards children" pursuant to La. C.E. art. 412.2.

Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. La. C.E. art. 401. All relevant evidence is admissible except as otherwise provided by positive law. Evidence which is not relevant is not admissible. La. C.E. art. 402. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay, or waste of time. La. C.E. art. 403.

The fundamental rule in Louisiana governing the use of evidence of other crimes, wrongs, or acts is that such evidence is not admissible to prove that the accused committed the charged crime because he has committed other such crimes in the past. See State v. Hatcher, 372 So.2d 1024, 1036 (La. 1979) (Tate, J., concurring on rehearing).

La. C.E. art. 404(B)(1) provides:

> Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.

The Louisiana Supreme Court first recognized a "lustful disposition" exception to the general rules of evidence in State v. Cupit, 189 La. 509, 179 So. 837 (1938). In Cupit, the defendant was charged with assault with intent to commit rape of his niece. The state presented evidence the defendant had raped another niece and that the defendant had been charged with the rape of a third niece. The Supreme Court held the evidence was admissible because the

"prior offenses ... **clearly tended to show the lustful disposition the defendant bore towards his nieces,** and his unnatural desire to have sexual intercourse with them; all of his nieces being children of tender age." Cupit, 179 So. at 839 (emphasis supplied). In State v. Kennedy, 00-1554 (La. 4/3/01), 803 So.2d 916, the Louisiana Supreme Court held that absent a dispute as to whether the accused intended to commit the crime, evidence of other crimes was prohibited to show intent when the crime charged was a general intent crime.

In 2001, the legislature enacted La. C.E. art. 412.2 in response to State v. McArthur, 97-2918 (La. 10/20/98), 719 So.2d 1037 and Kennedy, *supra*. See also State v. Williams, 02-1030 (La. 10/15/02), 830 So.2d 984, 986. La. C.E. art. 412.2(A) provides:

> When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, **evidence of the accused's commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children may be admissible and may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in Article 403.**

(emphasis supplied)

Accordingly, pursuant to La. C.E. art. 412.2(A), evidence of a prior sexual offense indicating that the defendant has a "lustful disposition toward children" is admissible if it is relevant and if the probative value of the evidence outweighs its prejudicial effect. State v. Olivieri, 03-563 (La.App. 5 Cir. 10/28/03), 860 So.2d 207, 218. Rulings on the admissibility of evidence will not be disturbed, absent an abuse of discretion. Id.

In the instant case, A.D. did not identify the defendant at trial as the man who ostensibly came to her home to sell cleaning supplies or who she saw in handcuffs at the top of her street.[FN3] A.D. only testified that the complexion of the man who came to her home was similar to the defendant's complexion. The state never proved that the defendant was the person who came to A.D.'s home at trial. However, the prosecutor indicated at the hearing on the Notice of

Intent that A.D. positively identified the defendant as the man that had come to her home. Thus, when the state called A.D. as a witness, the trial court had reason to believe that she would identify him in open court. A.D. did not do so. A.D.'s testimony was irrelevant because it did not tend to make the defendant's alleged lustful disposition towards children more probable or less probable. Thus, at a minimum, the trial court should have stricken A.D.'s testimony from the record and instructed the jury to disregard it.

> FN3. At the hearing on the Notice of Intent, the prosecutor indicated that A.D. and G.P. had previously identified the defendant in 1993. However, the record indicates that A.D. did not identify the defendant at trial.

The defendant also alleges that the trial court erred by failing to instruct the jury that no legal action was instituted against him for the allegations raised by A.D. Prior to A.D.'s testimony, the trial court instructed the jury as follows:

> Ladies and gentleman, listen to me carefully. Evidence that a defendant was involved in the commission of an offense other than the offense for which he is on trial is to be considered only for a limited purpose. The sole purpose for which such evidence may be considered is whether it tends to show guilty knowledge, absence of mistake or accident, intent, system motive, identity, or to show a lustful disposition towards children. Remember, the accused is on trial only for the offense charged. You may not find him guilty of this offense merely because he may have committed another offense.

The trial court gave a nearly identical limiting instruction to the jury before the jury began its deliberations.

The record indicates that defense counsel did not make a contemporaneous objection to either instruction. A party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error. La. C. Cr. P. art. 801(C). The nature of the objection and grounds therefor shall be stated at the time of objection. Id. This

Court has held that a defendant is required to make a timely objection under La. C. Cr. P. art. 801 in order to preserve a jury charge issue for review. See State v. Gardner, 05-62 (La.App. 5 Cir. 6/28/05), 907 So.2d 793 (the defendants were precluded from raising issues pertaining to jury charges on appeal when the defendants failed to object to the charges given or the trial court's failure to give a specific charge). Accordingly, we need not consider the defendant's argument that the trial court erred by failing to instruct the jury that no legal action was instituted against him for the allegations raised by A.D.

Even though A.D.'s testimony should have been stricken from the record, we need not reverse the defendant's conviction. La. C. Cr. P. art. 921 provides "[a] judgment or ruling shall not be reversed by an appellate court because of any error, defect, irregularity, or variance which does not affect substantial rights of the accused." The introduction of inadmissible other crimes evidence is subject to a harmless error analysis. State v. Girod, 96-660 (La.App. 5 Cir. 11/25/97), 703 So.2d 771, 775-776 (quoting State v. Johnson, 94-1379 (La. 11/27/95), 664 So.2d 94, 101-102, reconsideration denied, 94-1379 (La. 4/8/96), 671 So.2d 332). An error is harmless when the verdict is "surely unattributable to the error." State v. Williams, 05-318, p. 4 (La.App. 5 Cir. 1/17/06), 921 So.2d 1033, 1036, writ denied, 06-0973 (La. 11/3/06), 940 So.2d 654.

In this case, the jury's verdict was surely unattributable to the alleged error. The state presented overwhelming evidence of guilt at trial without consideration of the defendant's lustful disposition towards children. K.S. consistently testified that the defendant licked and bit her on her "butt" and her "nu-nu." K.S. indicated that her "nu-nu" was her vaginal area. K.S.'s testimony was corroborated by Dr. Benton and Omalee Gordon's interview. Gina Pineda testified that male DNA, from which the defendant could not be excluded, was recovered from K.S.'s genitals and gluteal cleft. F.S. testified that when she walked into the defendant's bedroom, K.S. was "half naked" and the defendant was "butt naked." F.S. further testified that she saw the defendant "licking" and "eating" on K.S.'s "bottom."

Accordingly, this assignment of error has no merit.[13]

---

[13] Williams, 28 So.3d at 363-66; State Rec., Vol. I of VII.

The Louisiana Supreme Court then denied petitioner's related writ application without assigning reasons.[14]

The United States Fifth Circuit Court of Appeals has held: "In habeas actions, [a federal court] does not sit to review the mere admissibility of evidence under state law." Little v. Johnson, 162 F.3d 855, 862 (5th Cir. 1998). Therefore, to the extent that petitioner is arguing that the state courts misapplied state evidence law, his claim is not cognizable in this federal proceeding.

Moreover, to the extent that petitioner is arguing that the introduction of A.D.'s testimony violated federal law, he has failed to demonstrate that he is entitled to *habeas* relief on that basis. The United States Fifth Circuit Court of Appeals has noted:

> We will not grant habeas relief for errors in a trial court's evidentiary rulings unless those errors result in a "denial of fundamental fairness" under the Due Process Clause. The erroneous admission of prejudicial evidence will justify habeas relief only if the admission was a crucial, highly significant factor in the defendant's conviction.

Neal v. Cain, 141 F.3d 207, 214 (5th Cir. 1998) (citations omitted); see also Little, 162 F.3d at 862 ("[O]nly when the wrongfully admitted evidence has played a crucial, critical, and highly significant role in the trial will habeas relief be warranted.").

In the instant case, the admission of A.D.'s testimony simply cannot be said to have played a crucial, critical, and highly significant role in petitioner's conviction. The incident involving A.D. had occurred fifteen years before, and A.D. never even stated in her testimony that petitioner was in fact the man who attacked her. That testimony clearly pales in comparison to K.S.'s compelling testimony that she had been raped by petitioner. This Court has no hesitation in

---

[14] State v. Williams, 34 So.3d 860 (La. 2010) (No. 2009-K-2565).

concluding that the jury's verdict resulted from K.S.'s credible testimony, not from A.D.'s irrelevant testimony. Therefore, he has failed to establish that the admission of A.D.'s testimony resulted in a denial of fundamental fairness. Accordingly, this claim should be denied.

Lastly, the Court notes that petitioner also complains that the trial court failed to instruct the jury that the offense against A.D. never resulted in a conviction. However, no conviction is required in order for evidence of prior bad acts to be admissible. La. Code Evid. art. 412.2; see also La. Code Evid. art. 404(B); State v. Williams, 85 So.3d 759, 774 (La. App. 4th Cir. 2012). Further, as the state court pointed out, limiting instructions concerning such evidence are required *only* if requested by the defendant. State v. Prieur, 277 So.2d 126, 130 (La. 1973). No such request was made here. Therefore, petitioner has failed to show even a violation of state law, much less the violation of federal law which would be required to warrant federal *habeas corpus* relief.

### B. Ineffective Assistance of Counsel

Petitioner next claims that he received ineffective assistance of counsel. The United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel. A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 697 (1984). A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e.

deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong.  Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.  See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001).  "Counsel's performance is deficient if it falls below an objective standard of reasonableness."  Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998).  Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.  See Strickland, 466 U.S. at 689.  "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690).  A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Matthesen v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."  Crockett, 796 F.2d at 793.

Expressly citing Strickland, the state district court rejected petitioner's ineffective assistance of counsel claims in the post-conviction proceedings,[15] and petitioner's related writ applications were then also denied by the Louisiana Fifth Circuit Court of Appeal[16] and by the Louisiana Supreme Court.[17]  Because such a claim is a mixed question of law and fact, this Court must defer to the state court decision rejecting petitioner's claims unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002).  Moreover, the United States Supreme Court recently explained that, under the AEDPA, federal *habeas corpus* review of ineffective assistance of counsel claims is in fact *doubly* deferential:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable.  This is different from asking whether defense counsel's performance fell below Strickland's standard.  Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court.  Under AEDPA, though, it is a necessary premise that the two questions are different.  For purposes of § 2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law.  A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.
>
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could

---

[15]  State Rec., Vol. II of VII, Order dated August 24, 2011.

[16]  State v. Williams, No. 11-KH-1110 (La. App. 5th Cir. Feb. 27, 2011); State Rec., Vol. II of VII.

[17]  State v. Williams, 90 So.3d 1061 (La. 2012) (No. 2012-KP-0698).

disagree on the correctness of the state court's decision. <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." <u>Ibid</u>. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." <u>Knowles v. Mirzayance</u>, 556 U.S. ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

<u>Harrington v. Richter</u>, 131 S.Ct. 770, 785-86 (2011) (citation omitted). The Supreme Court then explained:

Surmounting <u>Strickland</u>'s high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the <u>Strickland</u> standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.

Establishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. *The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.* The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.*

Id. at 788 (citations omitted; emphasis added). For the following reasons, the Court finds that, under these stringently deferential standards, it simply cannot be said that relief is warranted in the instant case with respect to petitioner's ineffective assistance of counsel claims.

Petitioner's first ineffective assistance claim concerns counsel's actions and inactions concerning the testimony of A.D. Specifically, petitioner claims that counsel should have reasserted his objection to A.D.'s testimony and moved to strike the testimony after it was given, should have moved for a mistrial based on the testimony, should have objected to the jury charge given concerning the testimony, and should have requested an additional limiting instruction.

Counsel did in fact object to the testimony, and the matter was examined in depth a pretrial hearing. As the Louisiana Fifth Circuit Court of Appeal explained on direct appeal:

> On May 20, 2008, the state filed a Notice of Intent to Introduce Evidence of Similar Crimes in Sex Offense Cases Pursuant to La.Code of Evidence Article 412.2 (the "Notice of Intent")....
> ....
> The Notice of Intent indicated that the "State intend[ed] to introduce" the testimony of two women who, while they were juveniles, had separate encounters with the defendant in 1993. One incident resulted in the defendant's arrest and subsequent guilty plea for lewdness involving a child in the Third District Court of Utah. The second incident resulted in defendant's arrest for sexual abuse of a child. The Notice of Intent further indicated that the state intended to use these incidents to demonstrate the defendant's "lustful disposition towards children" pursuant to La. C.E. art. 412.2.
> On May 29, 2008, a hearing was held on the Notice to Intent.[FN1] The trial court allowed the prosecutor to testify in lieu of the victims over defense counsel's objection. The prosecutor indicated that she obtained the defendant's certified Utah conviction for lewdness involving a child. The prosecutor also indicated that she was able to obtain police reports from Utah authorities and locate the two women who were referred to in the Notice of Intent.

One of the women referred to in the Notice of Intent was A.D., who was thirteen years old at the time of her encounter with the defendant.[FN2]  The prosecutor testified that she spoke to A.D. After speaking to A.D., the prosecutor learned that a man had come to A.D.'s door in 1993 selling cleaning supplies and that he had asked to come inside to give her a demonstration.  After A.D. acquiesced, the man told A.D. that she was pretty and that "he would lick her up" if she was his girlfriend.  The defendant then stained the "crotch of [A.D.'s] shorts" and made "overt and verbal gestures" in an attempt to remove the stain near her genital area.  Afterwards, A.D. became very upset, asked the defendant to leave the house, and told a friend what had transpired.  A.D.'s friend contacted the police.  No legal action was instituted against the defendant for the allegations raised by A.D.

[FN2]  In accordance with La. R.S. 46:1844, the victims and their family members will be referred to by the use of initials in order to protect their identities.  See also State v. Myles, 04-677 (La.App. 5 Cir. 1/25/05), 894 So.2d 515, 528.

The second woman referred to in the Notice of Intent was G.P., who was twelve years old at the time of her encounter with the defendant.  The prosecutor also spoke to G.P.  G.P. and A.D. lived on the same street at the time of the incidents.  According to G.P., the defendant knocked on her door, asked if she was alone, and told her that he wanted to help her clean a stain off the carpet.  While G.P. was bending down, the defendant told her to turn around.  He then placed his hands on her buttocks, marked G.P.'s crotch with a stain, put his hands up the inside of her shorts, and "rubbed her pubic and vaginal area with his hand."  G.P. ran away, locked herself in a bathroom, and ordered the defendant to leave her house.  She then called a friend, who called the police.

The prosecutor testified that both A.D. and G.P. subsequently identified the defendant, "as he was still remaining on that street

> when the police arrived." At the conclusion of the hearing, the trial
> court ruled that the testimony of the witness was admissible pursuant
> to La. C.E. art. 412.2. *Counsel for the defendant objected to the
> ruling.*[18]

Ultimately, the prosecution called only one of the two witnesses, A.D., to testify at trial.

To the extent that petitioner is suggesting that counsel should have reasserted his objection prior to A.D.'s testimony at trial, that was unnecessary. The ruling at the pretrial hearing was adverse and counsel objected;[19] thus, the issue was already preserved for appeal. See La. Code Crim. P. art. 841(B); State v. Parker, 421 So.2d 834, 840 (La. 1982). Therefore, counsel did not perform deficiently for failing to reurge his objection. Moreover, there is no reason to believe that the trial judge would have reversed his prior ruling, and so petitioner has not shown that he was prejudiced by counsel's inaction.

To the extent that petitioner is arguing that counsel should have moved to strike A.D.'s testimony after it was given, this Court agrees. As noted by the Louisiana Fifth Circuit Court of Appeal on direct appeal, A.D. did not identify petitioner as her attacker at trial and, therefore, her testimony was ultimately irrelevant. It does not necessarily follow, however, that petitioner is entitled to relief. As previously explained, in addition to showing that his counsel's performance was deficient, petitioner must also show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. For the reasons already noted, petitioner was convicted based on the victim's compelling

---

[18]  Williams, 28 So.3d at 360-61 (emphasis added); State Rec., Vol. I of VII.

[19]  State Rec., Vol. III of VII, transcript of May 28, 2008, at p. 15.

testimony and identification of petitioner. Based on that evidence, there is simply no reasonable probability that the result of the trial would have been different even if counsel had moved for A.D.'s irrelevant testimony to be stricken.

To the extent that petitioner is arguing that counsel was ineffective for failing to move for a mistrial based on the testimony, that claim likewise has no merit. A decision as to whether to move for a mistrial is one of trial strategy. See Hatch v. Lambert, 215 Fed. App'x 614, 615 (9th Cir. 2006); Brooks v. Cain, Civ. Action No. 06-1869, 2009 WL 3088323, at *17 (E.D. La. Sept. 21, 2009); Franklin v. Thompson, Civ. Action No. 07-543, 2007 WL 3046642, at *12 (E.D. La. Oct. 17, 2007). "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." Garland v. Maggio, 717 F.2d 199, 206 (5th Cir. 1983). That simply is not the case here. Counsel's choice to proceed with the trial, rather to seek a mistrial based on testimony which was ultimately irrelevant, did not result in any obvious unfairness to petitioner. Moreover, there is no reason to believe that a mistrial would have been granted even if one had been requested. The testimony was not grounds for a mandatory mistrial under state law, and there is no reasonable probability that the trial court would have resorted to such a drastic option as a matter of discretion. See La. Code Crim. P. arts. 770 and 771. Therefore, petitioner has not shown either that counsel performed deficiently in this regard or that prejudice resulted.

To the extent that petitioner is arguing that counsel was ineffective for failing to object to the jury charge concerning the testimony, that claim fares no better. Prior to A.D.'s testimony, the Court instructed the jury as follows:

All right. Ladies and gentlemen, listen to me carefully. Evidence that a defendant was involved in the commission of an offense other than the offense for which he is on trial is to be considered only for a limited purpose. The sole purpose for which such evidence may be considered is whether it tends to show guilty knowledge, absence of mistake or accident, intent, system, motive, identity, or to show a lustful disposition towards children. Remember, the accused is on trial only for the offense charged. You may not find him guilty of this offense merely because he may have committed another offense.[20]

The judge then repeated the same instruction when charging the jury at the end of trial.[21]

Prior to A.D.'s testimony, everyone involved anticipated that A.D. would expressly identify petitioner as the person who attacked her. Therefore, the instruction given prior to her testimony was clearly proper and there was no basis for such an objection. Moreover, her testimony was not stricken, and therefore the instruction at the end of trial was also proper because the jurors needed to be aware that they could not return a guilty verdict based merely on A.D.'s testimony. Accordingly, counsel did not perform deficiently in failing to object to the instruction, and petitioner suffered no prejudice as result of that failure.

To the extent that petitioner is claiming that counsel should have requested that the jury be instructed to disregard A.D.'s testimony as irrelevant, this is simply a variation of his earlier claim that counsel should have moved to strike the testimony. However, as previously explained with respect to that claim, deficient performance alone is insufficient to warrant relief. Rather, petitioner must additionally show "that there is a reasonable probability that, but for counsel's

---

[20] State Rec., Vol. VI of VII, transcript of June 18, 2008, at p. 19.

[21] State Rec., Vol. VI of VII, transcript of June 18, 2008, at pp. 65-66.

unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694. For the reasons already noted, based on the victim's compelling testimony and identification of petitioner, there is simply no reasonable probability that the result of the trial would have been different even if counsel had moved for an additional limiting instruction with respect to A.D.'s testimony. Therefore, this claim likewise fails.

Petitioner next claims that counsel was ineffective for failing to object to the DNA evidence as hearsay on the basis that testifying witness, Gina Pineda, may not have been the analyst who conducted the DNA tests.[22] Recent decisions from the United States Supreme Court make clear that forensic reports implicate the Confrontation Clause, and, therefore, a defendant generally must be accorded an opportunity to cross-examine the analyst who actually performed the forensic tests. <u>Bullcoming v. New Mexico</u>, 131 S.Ct. 2705 (2011); <u>Melendez-Diaz v. Massachusetts</u>, 557 U.S. 305 (2009). Those decisions post-dated petitioner's trial, and, therefore, counsel obviously could not have known of them. However, even if counsel should have anticipated such rulings based on <u>Crawford v. Washington</u>, 541 U.S. 36 (2004), and even if counsel could be deemed to have performed deficiently for failing to do so and for failing to object to the DNA evidence, his claim still fails because, again, he cannot establish the required prejudice for the following reasons.

First, the test performed in this case was not of the type which can conclude with a reasonable degree of certainty that the match at issue *excludes* all persons other than the defendant;

---

[22] The record is unclear whether Pineda herself conducted the tests at issue. However, for the purposes of this decision, the Court will assume that she did not.

rather, the test here was a less conclusive type which instead simply determines whether the match could *include* the defendant. As a result, Pineda explained:

> So, the results of this testing are not saying that these profiles that we're obtaining from the victim's rape kit are consistent with Eddie Williams, Jr., to the exclusion of everybody else in the world, that's not what these results are saying. They're saying that he cannot be excluded as a potential donor, neither can his paternal relatives, male paternal relatives be excluded as a donor of the sample.[23]

Obviously, therefore, the DNA test results here, while undeniably favorable to the prosecution, were no so conclusive as to eliminate the possibility of reasonable doubt.

Second, and more importantly, the crucial evidence in this case was not this equivocal DNA evidence. Even without the DNA evidence, petitioner likely would have been convicted based on K.S.'s credible and compelling testimony. Therefore, even if counsel had moved to exclude the DNA evidence, there is no reasonable probability that the result of the proceeding would have been different. Accordingly, once again, petitioner's ineffective assistance of counsel claim fails because he cannot show the prejudice required under Strickland.

Petitioner also claims that counsel should not have elicited F.S.'s testimony that she had been the victim of domestic violence at petitioner's hands.[24] During cross-examination, F.S. testified that petitioner had previously been in jail for domestic violence against her.[25] However, defense counsel's clear purpose in eliciting this information was to suggest that F.S. had falsely

---

[23]  State Rec., Vol. V of VII, transcript of June 17, 2008, at p. 158.

[24]  In actuality, petitioner claims that counsel should have objected to this testimony. However, it was defense counsel who purposely elicited the testimony.

[25]  State Rec., Vol. V of VII, transcript of June 17, 2008, at pp. 45-46.

accused petitioner due to the volatile nature of their relationship.[26]  Even if that decision had been

questionable, that would be insufficient to warrant relief.  See Green v. Johnson, 116 F.3d 1115,

1122 (5th Cir. 1997) ("We will not find inadequate representation merely because, with the benefit

of hindsight, we disagree with counsel's strategic choices.").  However, in this case, the defense

strategy was in fact a reasonable one, and counsel cannot be considered to have performed

deficiently simply because the strategy failed and jury rejected the defense.  Gray v. Lucas, 677 F.2d

1086, 1094 (5th Cir. 1982) ("[T]he fact that a particular strategy may prove to be unsuccessful does

not by itself establish ineffective assistance.").  Additionally, once again, petitioner's claim also fails

on the second prong of the Strickland analysis because he cannot show that this testimony prejudiced

him.  Petitioner's guilty verdict resulted from K.S.'s testimony that petitioner had raped her, not

from F.S.'s revelation that petitioner had a history of domestic violence.  There is no reasonable

probability that the result of the proceeding would have been different but for defense counsel

eliciting this testimony from F.S.[27]

---

[26]  See State Rec., Vol. VI of VII, transcript of June 18, 2008, at pp. 49.

[27]  In connection with this claim, petitioner also complains about other comments which he
contends impermissibly referenced prior bad acts.  To the extent that those complaints are meant to
be construed as separate claims, they likewise fail.

The comments at issue primarily related to A.D.'s testimony concerning the events in Utah.
However, as noted, counsel *did* object to testimony regarding those matters at the pretrial hearing,
and his objection was overruled.  Therefore, counsel's performance was not deficient in this respect,
and, for the reasons previously noted, no prejudice resulted in any event.

Petitioner also complains about a comment by Deputy Brian Brinser that he "had dealt with
[petitioner] previously on other calls for service at his residence."  State Rec., Vol. IV of VII,
transcript of June 16, 2008, at p. 253.  However, again, this information was purposely and validly
elicited by defense counsel as part of his strategy to show that F.S. was falsely accusing petitioner.
Moreover, as noted by the state district court in its opinion rejecting this claim, Brinser's vague
comment did not directly implicate petitioner in any prior bad acts and, therefore, was not even
objectionable.  State Rec., Vol. II of VII, Order dated August 24, 2011, at p. 2.

Lastly, petitioner claims that counsel was ineffective for failing to request that the jury be instructed that a conviction of aggravated rape carried a mandatory penalty of life imprisonment without benefit of probation, parole, or suspension of sentence. The Louisiana Supreme Court has explained: "When the penalty to be imposed is a mandatory one, our law requires the trial judge to inform the jury, on request of the defendant, of the penalty and to permit defense counsel to argue the penalty to the jury." State v. Hooks, 421 So.2d 880, 886 (La. 1982). However, "counsel's decisions regarding whether to request special jury charges is inherently one of trial strategy." Taylor v. Cain, Civ. Action No. 07-3929, 2008 WL 4186883, at *9 (E.D. La. Sept. 10, 2008). As previously noted, the United States Supreme Court has cautioned courts not to second-guess counsel's decisions on matters of trial tactics through the distorting lens of hindsight; rather, courts are to employ a strong presumption that counsel's conduct falls within a wide range of reasonable assistance and, under the circumstances, might be considered sound trial strategy. Strickland, 466 U.S. at 689. Moreover, even if counsel's failure to request such an instruction did in fact stem from deficient performance rather than strategic choice, petitioner once again cannot be granted relief without a showing of prejudice. Here, despite petitioner's unfounded speculation to the contrary, there is simply no reason to believe that counsel's failure to request such an instruction it in any way affected the outcome of the trial. Accordingly, this claim fails. See Jones v. Cain, Civ. Action No. 10-213, 2010 WL 5375951, at *14 (E.D. La. Aug. 5, 2010) (Shushan, M.J.), adopted as modified in part on other grounds, 2010 WL 5375949 (E.D. La. Dec. 17, 2010) (Vance, J.); Franklin v. Warden Louisiana State Penitentiary, Civ. Action No. 06-CV-0151, 2008 WL 5109742, at *7 (W.D. La. Nov. 6, 2008) (Hornsby, M.J.) (adopted by Hicks, J., on Dec. 2, 2008); Richthofen v. Cain, Civ. Action No. 05-5701, 2008 WL 630477, at *51-52 (E.D. La. Mar. 7, 2008).

In light of the foregoing, the undersigned finds that petitioner has failed to show that the state court's decision rejecting his ineffective assistance claims was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Accordingly, under the doubly deferential standards of review mandated by the AEDPA, these claims should be denied.

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Eddie Williams be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[28]

New Orleans, Louisiana, this fourteenth day of August, 2012.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[28] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.