| | |
|---|---|
| **EDDIE WILLIAMS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-1112** |
| **N. BURL CAIN, WARDEN** | **SECTION: "G"(3)** |

## ORDER AND REASONS

Before the Court are Petitioner Eddie Williams's ("Petitioner") objections[1] to the August 14, 2012 Report and Recommendation of the United States Magistrate Judge assigned to the case.[2] Petitioner, a state prisoner incarcerated at Louisiana State Penitentiary, Angola, Louisiana, filed a complaint pursuant to 28 U.S.C. § 2254 alleging that the state trial court improperly admitted evidence of alleged prior bad acts and that he received ineffective trial counsel.[3] The Magistrate Judge recommended that the complaint be dismissed with prejudice.[4] Petitioner objects, rearguing the claims he urged in his petition.[5] After reviewing the complaint, the Magistrate Judge's Report and Recommendation, Petitioner's objections, the record, and the applicable law, for the following reasons, the Court will overrule Petitioner's objections, adopt the Magistrate Judge's recommendation and dismiss this action with prejudice.

---

[1] Rec. Doc. 9.

[2] Rec. Doc. 8.

[3] Rec. Doc. 1-1 at 6, 14.

[4] Rec. Doc. 8 at 1.

[5] Rec. Doc. 9.

# I. Background

## A. Procedural History

On June 18, 2008, Petitioner was convicted of aggravated rape under Louisiana law.[6] On June 25, 2008, he was sentenced to a term of life imprisonment without benefit of parole, probation, or suspension of sentence.[7]  On October 27, 2009, the Louisiana Fifth Circuit Court of Appeal affirmed Petitioner's conviction and sentence.[8] Petitioner's related writ application was then denied by the Louisiana Supreme Court on May 7, 2010.[9]

On May 3, 2011, Petitioner filed an application for post-conviction relief with the state district court.[10] That application was denied on August 24, 2011.[11] Petitioner's related writ application was denied by the Louisiana Fifth Circuit Court of Appeal on February 27, 2011.[12] Petitioner filed a writ application with the Louisiana Supreme Court on April 2, 2012.[13]

On April 26, 2012, Petitioner filed the instant federal application for *habeas corpus* relief.[14] In support of his application, he asserts the following claims: (1) Petitioner's rights were violated

---

[6] State Rec., Vol. I of VIII, Jury Verdict Form.

[7] State Rec., Vol. III of VIII, Minute Entry dated June 25, 2008.

[8] *State v. Williams*, 09-48 (La. App. 5th Cir. 10/27/09); 28 So.3d 357. State Rec., Vol. I of VIII.

[9] *State v. Williams*, 09-2565 (La. 5/7/10); 34 So.3d 860. State Rec., Vol. IV of VIII.

[10] State Rec., Vol. IV of VIII, Application dated May 3, 2011.

[11] State Rec., Vol. IV of VIII, Order dated August 24, 2011.

[12] *State v. Williams*, 11-1110 (La. App. 5th Cir. 2/27/11); State Rec., Vol. VIII of VIII.

[13] State Rec., Vol. VIII of VIII.

[14] Rec. Doc. 1.

by the improper admission of evidence of prior bad acts;[15] and (2) Petitioner received ineffective assistance of counsel.[16] In its response, the State conceded that the application was timely but argued that Petitioner's remedies in state court were not yet exhausted because his post-conviction writ application was still pending before the Louisiana Supreme Court.[17] However, shortly after the State's response was filed, the Louisiana Supreme Court denied Petitioner's writ application on June 15, 2012.[18] Therefore, the Magistrate Judge found that the exhaustion requirement was satisfied, and addressed Petitioner's claims on the merits.

***B. Trial Testimony***

Petitioner's claims relate primarily to the testimony given at trial. Accordingly, a brief summary of the trial testimony is necessary. K.S., the victim, testified at trial that before Hurricane Katrina, she was living with her mother, F.S., and Petitioner.[19] K.S. testified that Petitioner "took down her pants" one day and started "licking" her and "biting" her on her "nu-nu" and her "butt."[20] K.S. indicated that her "nu-nu" is the "place where the pee-pee comes out."[21] She testified that Petitioner performed the same actions a second time.[22] K.S. testified that F.S. found her in the bed

---

[15] Rec. Doc. 1-1 at 6–14.

[16] *Id.* at 14–25.

[17] Rec. Doc. 5.

[18] *State v. Williams*, 12-698 (La. 6/15/12); 90 So. 3d 1061.

[19] *State v. Williams*, 28 So. 3d at 361.

[20] *Id.*

[21] *Id.*

[22] *Id.*

with Petitioner.[23] F.S. and K.S. went to her sister Ke. S.'s home and called the police. F.S. and Ke. S. also testified at trial, corroborating K.S.'s testimony.[24]

A rape kit was performed on K.S. at the Ambulatory Care Center at Children's Hospital.[25] Dr. Scott Benton testified that Dr. Monica Weiner examined K.S., who indicated to Dr. Weiner that Petitioner "licked her in the booty and nu-nu."[26] Dr. Benton testified that nothing found during the physical examination invalidated the history given by K.S.[27]

Gina Pineda testified for the State as an expert in the field of forensic science and DNA analysis.[28] Pineda testified that she prepared a report in conjunction with the instant case.[29] Pineda additionally testified that male DNA was recovered from K.S.'s genitals and gluteal cleft.[30] Pineda reviewed the DNA evidence submitted with the rape kit.[31] After reviewing the DNA evidence, Pineda concluded that Petitioner could not "be excluded as being a donor to the male DNA in the dried secretions and genital swabbing."[32]

Omalee Gordon of the Gretna Police Department's Child Advocacy Center testified that she

---

[23] *Id.*

[24] *Id.*

[25] *Id.* at 362.

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] *Id.*

interviewed K.S. approximately two weeks after the incident.[33] The jury viewed the videotape of the interview, during which K.S. stated that defendant licked and bit her on her "booty" and her "nu-nu."[34]

The final witness to testify was A.D., a witness the State listed in its May 20, 2008 "Notice of Intent to Introduce Evidence of Similar Crimes in Sex Offense Cases" pursuant to Louisiana Code of Evidence article 412.2 or article 404(B).[35] The Notice of Intent indicated that the State intended to introduce the testimony of two women who had separate encounters with Petitioner in 1993, while they were juveniles.[36] One incident resulted in Petitioner's guilty plea for lewdness involving a child in the Third District Court of Utah.[37] The second incident resulted in Petitioner's arrest for sexual abuse of a child.[38] The Notice of Intent further indicated that the State intended to use these incidents to demonstrate Petitioner's "lustful disposition towards children" pursuant to Louisiana Code of Evidence article 412.2.[39] On May 29, 2008, a hearing was held on the Notice to Intent.[40] The

---

[33] *Id.* at 362.

[34] *Id.*

[35] State Rec. Vol. III of VIII, Notice of Intent dated May 20, 2008.

[36] *Id.*

[37] *Id.*

[38] *Id.*

[39] *Id.* Louisiana Code of Evidence article 412.2(A) provides:
When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused's commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children may be admissible and may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in Article 403.

[40] State Rec. Vol. III of VIII, minute entry dated May 29, 2008.

prosecutor testified that both women could identify Petitioner.[41] Accordingly the trial court ordered that the testimony was admissible pursuant to Louisiana Code of Evidence article 412.2.[42] Defense counsel objected to the ruling.[43]

At trial, only one of the witnesses listed in the Notice of Intent testified. A.D. testified that when she was thirteen a man came to her door selling carpet cleaning products.[44] A.D. testified that the man "colored" on her shirt and "put his hand underneath it and tried to scrub that out."[45] She stated that the man told her "if you were my girlfriend, I'd lick you up."[46] At trial, A.D. did not identify Petitioner as the man who was selling cleaning products.[47] The prosecutor asked A.D. if "the complexion of the person who was in your home, is it consistent with the person who sits here in the courtroom," to which A.D. replied, "yes."[48]

## C. Report and Recommendation Findings

On August 14, 2012 the Magistrate Judge recommended that Petitioner's claims be dismissed with prejudice.[49] The Magistrate Judge addressed Petitioner's two claims separately: improper admission of evidence of prior bad acts and ineffective assistance counsel.

---

[41] Id.

[42] Id.

[43] Id.

[44] State v. Williams, 28 So. 3d at 362.

[45] Id.

[46] Id.

[47] Id.

[48] Id. at 362–63.

[49] Rec. Doc. 8 at 1.

Petitioner claimed that the trial court should not have admitted the testimony of the alleged previous victim, A.D.[50] The Magistrate Judge noted that federal courts do not grant *habeas* relief when a petitioner claims that state courts misapplied state evidence law.[51] However, the Magistrate Judge recognized that federal courts will only grant *habeas* relief if the state trial court's evidentiary ruling violated the fairness requirement of due process and if the admission of that evidence reasonably proved crucial or significant to the defendant's conviction.[52] While the Magistrate Judge agreed with the Louisiana Fifth Circuit Court of Appeal that A.D.'s testimony's should have been stricken from the record, he found that the admission of A.D.'s testimony did not play "a crucial, critical, and highly significant role in petitioner's conviction."[53] The Magistrate Judge then addressed Petitioner's complaint that the trial court failed to instruct the jury that the offense alleged by A.D. never resulted in a conviction.[54] The Magistrate Judge, citing the Louisiana Rules of Evidence, determined that a conviction is not required to admit a defendant's alleged prior bad acts into evidence.[55]

The Magistrate Judge utilized the *Strickland* standard in addressing Petitioner's ineffective assistance of counsel claim.[56] The Magistrate Judge found it unnecessary for Petitioner's attorney to reassert his objection to A.D.'s testimony because his counsel objected at a pre-trial hearing on

---

[50] Rec. Doc. 1-1 at 6.

[51] Rec. Doc. 8 at 13.

[52] *Id.*

[53] *Id.* (citing *Little v. Johnson*, 162 F.3d 855, 862 (5th Cir. 1998).

[54] *Id.* at 14.

[55] *Id.*

[56] *Id.*

the subject, preserving Petitioner's right to appeal the ruling.[57] The Magistrate Judge agreed with Petitioner's argument that his attorney should have moved to strike A.D.'s testimony after it was given.[58] However, the Magistrate Judge found that there was no reasonable probability that the result of trial would have been different even if counsel moved to strike the irrelevant testimony.[59]

The Magistrate Judge determined that counsel's failure to move for a mistrial did not result in any obvious unfairness to Petitioner.[60] The Magistrate Judge noted that a decision to move for a mistrial is a strategic one, and strategic decisions may only be the foundation of an ineffective assistance of counsel claim if the decision was "so ill chosen that it permeates the entire trial with obvious unfairness."[61] The Magistrate Judge found that defense counsel's decision did not rise to such a level of unfairness.[62]

The Magistrate Judge addressed Petitioner's argument that counsel was ineffective for failing to request that the jury be instructed to regard A.D.'s testimony as irrelevant.[63] The Magistrate Judge again found the lack of such an instruction did not reasonably affect the outcome of the proceeding because of the other compelling evidence against Petitioner.[64]

Petitioner also argued that his counsel was ineffective for failing to object to the DNA

---

[57] *Id.* at 20.

[58] *Id.*

[59] *Id.* at 20–21.

[60] *Id.* at 21.

[61] *Id.* (citing *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983)).

[62] *Id.*

[63] *Id.* at 22.

[64] *Id.* at 23.

evidence as hearsay because the testifying witness may not have been the analyst who performed the DNA tests.[65] The Magistrate Judge recognized that the Supreme Court recently held that a defendant must be granted the opportunity to cross-examine the expert who performed the analysis of the forensic evidence; however, these decisions post-dated Petitioner's trial.[66] The Magistrate Judge found that even if counsel's performance was deficient, Petitioner could not demonstrate the required prejudicial effect because of the ambiguous nature of the DNA test results and other compelling evidence against Petitioner.[67]

The Magistrate Judge addressed Petitioner's claim that his attorney should not have elicited testimony from F.S. on Petitioner's history of domestic violence against F.S.[68] However, the Magistrate Judge found that counsel's line of questioning constituted a reasonable trial strategy.[69] The Magistrate Judge also found that Petitioner could not show that the testimony prejudiced him.[70]

Finally, the Magistrate Judge addressed Petitioner's claim that his attorney should have requested a jury instruction explaining that a conviction of aggravated rape comes with a mandatory life sentence without the benefit of probation, parole, or suspension of sentence.[71] The Magistrate Judge determined that the decision was strategic.[72] The Magistrate Judge found no reasonable

---

[65] *Id.*

[66] *Id.*

[67] *Id.* at 23–24.

[68] *Id.* at 24.

[69] *Id.* at 25.

[70] *Id.*

[71] *Id.* at 26.

[72] *Id.*

probability that the instruction would have affected the outcome of the trial.[73]

## II. Objections

### A. Petitioner's Objections

Petitioner timely filed his objections to the Report and Recommendation on August 27, 2012.[74] Petitioner objects to the Magistrate Judge's finding that A.D.'s testimony did not play a crucial, critical or highly significant role in Petitioner's conviction.[75] He asserts that he "was denied a fair trial and due process of law by the improper inclusion of other crimes evidence."[76] He contends that the testimony was "overly prejudicial, legally improper and constituted reversible error."[77]

Petitioner objects to the Magistrate Judge's finding that counsel's failure to object to the jury instruction regarding A.D. did not prejudice the trial.[78] He contends the failure to object was prejudicial and reflects counsel's deficient performance.[79] He also objects to the Magistrate Judge's finding that Petitioner was not prejudiced by counsel's failure to move to strike A.D.'s testimony.[80] Petitioner argues that his attorney's failure to move to strike A.D.'s testimony permitted the jury to

---

[73] *Id.*

[74] Rec. Doc. 9.

[75] *Id.* at 2.

[76] *Id.*

[77] *Id.*

[78] *Id.* at 2–3.

[79] *Id.* at 3.

[80] *Id.*

hear "highly irrelevant, highly prejudicial testimony."[81]

Petitioner objects to the Magistrate Judge's finding that counsel's failure to object to the DNA evidence did not prejudice the trial.[82] Petitioner asserts that it was not harmless error because the "DNA evidence was the linchpin of the prosecution's case."[83] He contends that he was "prejudiced by this confrontation violation, because he could not cross-examine the actual analyst at trial concerning these errors with the DNA evidence, which reasonably could have led to other errors concerning the DNA evidence, with the probability that the outcome of the trial, would have been different."[84]

Finally, Petitioner objects to the Magistrate Judge's finding that his attorney's failure to ask for a jury instruction explaining that a conviction of aggravated rape comes with a mandatory life sentence did not prejudice the trial.[85] Petitioner contends that the jury would not have convicted Petitioner if they knew the conviction carried a mandatory life sentence because the jury asked the court to repeat the responsive verdicts, which he claims indicates the jurors' doubts.[86]

On October 2, 2012, Petitioner filed a "Supporting Argument to Traverse Brief Filed by Petitioner on August 27, 2012," reiterating his objection related to the DNA evidence.[87]

---

[81] *Id.*

[82] *Id.*

[83] *Id.*

[84] *Id.* at 6.

[85] *Id.* at 9.

[86] *Id.* at 9–10.

[87] Rec. Doc. 10.

### B. State's Response

The State of Louisiana did not file a brief in opposition to Petitioner's objections despite receiving notice of the filing posted on August 27, 2012.

## III. Standard of Review

### A. Review of the Magistrate Judge's Report and Recommendation

In accordance with Local Rule 73.2, this case was referred to the Magistrate Judge to provide a Report and Recommendation. A District Judge "may accept, reject, or modify the recommended disposition" of a Magistrate Judge on a dispositive matter.[88] The District Judge must "determine *de novo* any part of the [Report and Recommendation] that has been properly objected to." A District Court's review is limited to plain error of parts of the report which are not properly objected to.[89]

### B. Standard of Review Under the AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") limits the power of federal courts to grant Writs of *Habeas Corpus* in cases where a state court has adjudicated the petitioner's claim on the merits.[90]

Under 28 U.S.C. § 2254(d)(1), a federal court must defer to the state court's decision as to questions of law and mixed questions of law and fact unless it "was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court."[91] The Supreme Court has made a distinction between the application of the "contrary to" and

---

[88] FED. R. CIV. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1).

[89] *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending time to file objections from ten to fourteen days).

[90] *See Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).

[91] 28 U.S.C. §2254(d)(1).

"unreasonable application" clauses.[92] A federal *habeas* court may issue the writ under the "contrary to" clause if the state court applies a rule in a way that is inconsistent with governing law and Supreme Court precedent on identical facts; a federal *habeas* court may issue the writ under the "unreasonable application" clause if the state court unreasonably applies the governing law to the facts of the case.[93]

Under 28 U.S.C. § 2254(d)(2), factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."[94]

## IV. Law and Analysis

### A. Improper Admission of Evidence

Petitioner objects to the Magistrate Judge's finding that A.D.'s testimony did not play a crucial, critical or highly significant role in Petitioner's conviction. He contends that the testimony was "overly prejudicial, legally improper and constituted reversible error."

Federal courts do not "grant habeas relief for errors in a trial court's evidentiary rulings unless those errors resulted in a denial of fundamental fairness under the Due Process Clause."[95] "The erroneous admission of prejudicial evidence will justify habeas relief only if the admission was a crucial, highly significant factor in the defendant's conviction."[96]

On direct appeal, the Louisiana Fifth Circuit Court of Appeal addressed Petitioner's claim

---

[92] *See Bell v. Cone*, 535 U.S. 685, 694 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 403-404, (2000)).

[93] *Id.*

[94] 28 U.S.C. § 2254(d)(2); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).

[95] *Neal v. Cain*, 141 F.3d 207, 214 (5th Cir. 1998) (internal citations and quotation marks omitted).

[96] *Id.*

that the trial court erred in allowing A.D. to testify.[97] The Louisiana Fifth Circuit noted "evidence of a prior sexual offense indicating that the defendant has a 'lustful disposition toward children' is admissible if it is relevant and if the probative value of the evidence outweighs its prejudicial effect."[98] The court found "A.D.'s testimony was irrelevant because it did not tend to make [Petitioner's] alleged lustful disposition towards children more probable or less probable" as she did not identify Petitioner.[99] Therefore, the court found that "the trial court should have stricken A.D.'s testimony from the record and instructed the jury to disregard it."[100] However, the court held that the error was harmless because "the jury's verdict was surely unattributable to the alleged error" because "the state presented overwhelming evidence of [Petitioner's] guilt at trial without consideration of [Petitioner's] lustful disposition towards children."[101]

Petitioner contends that A.D.'s testimony was overly prejudicial. However, he has not shown that the testimony played a crucial, highly significant role in his conviction. As the Louisiana Fifth Circuit noted, the State presented overwhelming evidence of Petitioner's guilt. K.S. presented consistent testimony, which was corroborated by Dr. Benton and Omalee Gordon's interview. K.S.'s testimony was also corroborated by F.S. and Ke.S. Because of the overwhelming evidence against Petitioner, he has failed to establish that the admission of A.D.'s testimony played a crucial, highly significant role in his conviction. Accordingly, upon *de novo* review, the Court finds Petitioner's claim without merit.

---

[97] *State v. Williams*, 28 So. 3d at 363.

[98] *Id.* at 364 (citing *State v. Olivieri*, 03–563 (La.App. 5 Cir. 10/28/03), 860 So.2d 207, 218).

[99] *Id.*

[100] *Id.* 364–65.

[101] *Id.* at 365.

## B. Ineffective Assistance of Trial Counsel

Petitioner objects to the Magistrate Judge's finding that his defense counsel did not deprive him of his Sixth Amendment right to a fair trial. In his objections Petitioner claims his trial counsel's performance was ineffective when he failed: (1) to object to a jury instruction regarding A.D.'s testimony; (2) to reassert his objection to A.D.'s testimony; (3) to move to strike A.D.'s testimony after it was given; (4) to object to the admission of DNA evidence; and (5) to request a jury instruction that aggravated rape carries a mandatory sentence of life imprisonment. To succeed on such a claim, a petitioner must demonstrate both that counsel's performance was deficient and that the deficient performance prejudiced his defense.[102] If a court finds that a petitioner fails on either of these two prongs it may dispose of the ineffective assistance claim without addressing the other prong.[103]

To satisfy the deficient performance prong, a petitioner must overcome a strong presumption that the counsel's conduct falls within a wide range of reasonable representation.[104] Petitioner must show that the conduct was so egregious that it failed to meet the constitutional minimum guaranteed by the Sixth Amendment.[105] Courts addressing this prong of the test for ineffective counsel must consider the reasonableness of counsel's actions in light of all the circumstances.[106]

To prevail on the actual prejudice prong, a petitioner "must show that there is a reasonable

---

[102] *Strickland v. Washington*, 466 U.S. 668, 697 (1984).

[103] *Id.* at 697.

[104] *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

[105] *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001).

[106] *See Strickland*, 466 U.S. at 689.

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[107] A reasonable probability is "a probability sufficient to undermine confidence in the outcome."[108] As courts determine whether this prong is satisfied, they must consider "the relative role that the alleged trial errors played in the total context of [the] trial."[109]

As the record shows, the state trial court identified the governing legal standard found in *Strickland* and applied it to Petitioner's ineffective assistance of counsel claims. Because Petitioner repeats the same ineffective-assistance claims on federal *habeas corpus* review, the central question "is not whether a federal court believes the state court's determination under *Strickland* was incorrect but whether [it] was unreasonable—a substantially higher threshold."[110] In addition, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."[111] Thus, this standard is considered "doubly deferential" on *habeas corpus* review.[112] For the reasons discussed below, Petitioner has not shown that the state court's decision was unreasonable under this doubly deferential standard. Therefore, upon *de novo* review the Court finds Petitioner's claims without merit and overrules Defendant's objections.

### i. Failure to Object to the Jury Instruction Regarding A.D.'s Testimony

Petitioner objects to the Magistrate Judge's finding that his counsel was not ineffective for

---

[107] *Id.* at 694.

[108] *Id.*

[109] *Crockett*, 796 F.2d at 793.

[110] *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 478 (2007)) (quotation marks omitted).

[111] *Id.*

[112] *Id. See also Cullen v. Pinholster*, 131 S.Ct. 1388, 1403 (2011).

failing to object to the jury instruction regarding A.D.'s testimony. Petitioner contends his counsel should have requested a jury instruction that the offense against A.D. never resulted in a conviction. A petitioner must prove that an erroneous jury instruction "by itself so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even universally condemned."[113] Prior to A.D.'s testimony, the trial court instructed the jury as follows:

> Ladies and gentleman, listen to me carefully. Evidence that a defendant was involved in the commission of an offense other than the offense for which he is on trial is to be considered only for a limited purpose. The sole purpose for which such evidence may be considered is whether it tends to show guilty knowledge, absence of mistake or accident, intent, system motive, identity, or to show a lustful disposition towards children. Remember, the accused is on trial only for the offense charged. You may not find him guilty of this offense merely because he may have committed another offense.[114]

The trial judge repeated the same instruction when charging the jury at the end of trial.[115]

The Louisiana Code of Evidence provides that "the accused's commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children may be admissible."[116] Therefore, a conviction is not required in order for a court to admit evidence of prior bad acts.[117] Accordingly, Petitioner has not shown that defense counsel's performance was deficient because the prior offense need not result in a conviction to be admissible.

---

[113] *Henderson v. Kibbe*, 431 U.S. 145 (1977) (citations and quotation marks omitted).

[114] State Rec., Vol. VI of VIII, Trial Transcript at 690.

[115] State Rec., Vol. VI of VIII, Trial Transcript at 736–37.

[116] LA. CODE EVID. art. 412.2(A).

[117] *Cf. State v. Wright*, 11-141 (La. 12/6/11); 79 So.3d 309 (Other acts evidence that defendant's wife was fourteen years old when he married her.).

Further, Petitioner has not shown that he was prejudiced by defense counsel's failure to object to the jury instruction. Petitioner has presented no evidence, absent his own conclusory statements, that failure to object to the jury instruction was prejudicial. Considering the weight of the evidence against him, Petitioner has not shown that the result of the trial would have been different if counsel had moved for an additional limiting instruction. Petitioner has not demonstrated that the state court's decision denying his claim was contrary to, or involved an unreasonable application of clearly established federal law, as required by the Supreme Court. Accordingly, upon *de novo* review and under the deferential standards of review mandated by the AEDPA, the Court finds Petitioner's claim without merit.

### ii. Failure to Reassert Objection to A.D.'s Testimony

Petitioner objects to the Magistrate Judge's finding that his trial counsel was not ineffective for failing to reassert his objection to A.D.'s testimony. Counsel did raise an objection to the testimony before trial. On May 29, 2008, a hearing was held on the State's "Notice of Intent to Introduce Evidence of Similar Crimes in Sex Offense Cases." The trial court ordered that the testimony of A.D. was admissible pursuant to Louisiana Code of Evidence article 412.2, and defense counsel objected to the ruling. By objecting to the ruling, defense counsel preserved the issue for appeal.[118] Further, Petitioner raised the issue regarding the admissibility of A.D.'s testimony on appeal, and the Louisiana Fifth Circuit addressed it in detail, finding any error caused by admitting the testimony was harmless.[119] Accordingly, Petitioner has not shown that defense counsel

---

[118] *See* LA. CODE CRIM. PROC. art 841(A) ("An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence."). *See also State v. Parker*, 421 So. 2d 834, 840 (La. 1982) ("Although defense counsel did not object contemporaneously to the testimony of the two officers, the defendant filed prior to trial a [motion to exclude the evidence], the court's denial of which is sufficient to preserve this issue for review.").

[119] *State v. Williams*, 28 So. 3d at 363–66.

performed deficiently for failing to reassert his objection to A.D.'s testimony.

Further, Petitioner has not shown that he was prejudiced by defense counsel's failure to reassert the objection. Petitioner has presented no evidence, absent his own conclusory statements, that failure to reassert the objection to A.D.'s testimony was prejudicial. Considering the weight of the evidence against him, Petitioner has not shown that the result of the trial would have been different if counsel had reasserted his objection to A.D.'s testimony. Petitioner has not demonstrated that the state court's decision denying his claim was contrary to, or involved an unreasonable application of clearly established federal law, as required by the Supreme Court. Accordingly, upon *de novo* review and under the deferential standards of review mandated by the AEDPA, the Court finds Petitioner's claim without merit.

### iii. Failure to Move to Strike A.D.'s Testimony

Petitioner objects to the Magistrate Judge's finding that he was not prejudiced by his defense counsel's failure to move to strike the testimony of A.D. Petitioner argues that his attorney's failure to move to strike A.D.'s testimony permitted the jury to hear highly irrelevant and prejudicial testimony.

As the Louisiana Fifth Circuit noted on direct appeal, A.D.'s testimony was irrelevant because she did not identify Petitioner as her attacker at trial. Accordingly, the Court finds that defense counsel performed deficiently for failing to move to strike the testimony after it was given. However, Petitioner has not shown that there is a reasonable probability that the result of the proceeding would have been different but for counsel's failure to move to strike the testimony.

As discussed above, the State presented overwhelming evidence of Petitioner's guilt, and there is no reasonable probability that the result of trial would have been different if counsel had

moved to strike A.D.'s testimony. Petitioner has not demonstrated that the state court's decision denying his claim was contrary to, or involved an unreasonable application of clearly established federal law, as required by the Supreme Court. Accordingly, upon *de novo* review and under the deferential standards of review mandated by the AEDPA, the Court finds Petitioner's claim without merit.

### iv. Failure to Object to the Admission of DNA Evidence

Petitioner objects to the Magistrate Judge's finding that he was not prejudiced by his defense counsel's failure to object to the admission of DNA evidence. Petitioner asserts that it was not harmless error because the "DNA evidence was the linchpin of the prosecution's case." He contends that he was "prejudiced by this confrontation violation, because he could not cross-examine the actual analyst at trial concerning these errors with the DNA evidence, which reasonably could have led to other errors concerning the DNA evidence, with the probability that the outcome of the trial, would have been different."

The Supreme Court held in *Melendez-Diaz v. Massachusetts* that the state trial court violated the defendant's Sixth Amendment right to confront his accuser when the court admitted a certificate of a drug analysis report as *prima facie* evidence of the results contained within the report without the testimony of the analyst who performed it.[120] The Supreme Court held that the Confrontation Clause of the Sixth Amendment guarantees a defendant the right to confront the analyst who prepared the forensic report admitted into evidence at trial unless the analyst is unavailable or the defendant had a prior opportunity to cross-examine the analyst.[121]

---

[120] 557 U.S. 305, 311 (2009).

[121] *Id.*

The Supreme Court issued its decision in *Melendez-Diaz v. Massachusetts* while Petitioner's appeal of his conviction was still pending before the Louisiana Fifth Circuit and before he filed his direct appeal with the Louisiana Supreme Court.[122] "[C]ounsel is normally not expected to foresee future new developments in the law."[123] However, Petitioner raises another issue—whether the DNA evidence was admitted in violation of his right to confront his accuser. When the Supreme Court announces a rule in one of its opinions, an old rule applies to cases on direct and collateral review while a new rule generally applies only to cases on direct review, unless the rule is substantive or a "watershed rule of criminal procedure."[124] Because Petitioner's case was still on direct review when the Supreme Court issued its decision, *Melendez-Diaz* applies as controlling precedent regardless of its classification as an old or new rule.

In *Bullcoming v. New Mexico*, the Supreme Court held that the defendant's right to confront his accuser was violated where a blood-alcohol analysis report was introduced through the testimony of an analyst who had not certified the report, performed the testing or observed the testing.[125] In her concurring opinion, Justice Sontomayor stated, "It would be a different case if, for example, a supervisor who observed an analyst conducting a test testified about the results or a report about such results. We need not address what degree of involvement is sufficient because here [the testifying analyst] had no involvement whatsoever in the relevant test and report."[126]

In *U.S. v. Rose*, a supervisor of a laboratory, who reviewed and signed the lab report, testified

---

[122] The Supreme Court issued *Melendez-Diaz v. Massachusetts* on June 25, 2009.

[123] *Nelson v. Estelle*, 642 F.2d 903, 908 (5th Cir.1981).

[124] *Whorton v. Bockting*, 549 U.S. 406, 416 (2007) (citing *Saffle v. Parks*, 494 U.S. 484, 495 (1990)).

[125] 131 S.Ct. 2705 (2011).

[126] *Id.* at 2722. (Sotomayor, J., concurring in part).

at trial.[127] The supervisor's testimony did not precisely delineate whether she had personal knowledge of the tests performed or the results of the report.[128] The Fifth Circuit found no plain error in the trial court's decision to admit the testimony, "given the ambiguity of [the supervisor's] role in the lab analysis and the fact that she signed the lab report."[129] However, the court cautioned "that the prosecution may [not] avoid confrontation issues through the in-court testimony of any witness who signed a lab report without regard to that witness's role in conducting tests or preparing the report."[130]

The Fifth Circuit has noted that "even after *Bullcoming*, it is not clear whether the testimony of [an analyst]—who supervised and worked in the same lab as the analyst who did the actual testing—would violate the Confrontation Clause."[131] The Fifth Circuit declined to grant a certificate of appealability on the issue, finding that the defendant had not "made a substantial showing that his counsel was constitutionally deficient in failing to object to the analyst's testimony on Confrontation Clause grounds."[132]

In the instant case, Gina Pineda testified as to the DNA test results and report. Pineda testified that she is the Associate Director and Technical Leader of the private DNA lab that performed testing in Petitioner's case.[133] She testified regarding her job duties, stating:

---

[127] 587 F.3d 695, 700 (5th Cir. 2009).

[128] *Id.* at 701.

[129] *Id.*

[130] *Id.*

[131] *U.S. v. Johnson*, 558 F. App'x 450, 453 (5th Cir. 2014).

[132] *Id.*

[133] State Rec., Vol. V of VIII, Trial Transcript at 598.

> As Associate Director, my duties are essentially to troubleshoot in the laboratory. If there is a problem in the laboratory, it comes to my attention, and we work through a solution. I am eventually responsible for maintaining our standard operating procedures. I am responsible for training of new staff, for continuing education, for safety, as well as our external audits that we have on a routine basis.[134]

Pineda indicated that the laboratory has standard operating procedures that "must be followed by each qualified analyst or technician with each and every case that comes through our laboratory."[135] Pineda stated that the laboratory runs positive, negative and buffer controls as part of its quality control system.[136] Pineda testified that in Petitioner's case "all controls were run, and they produced adequate results indicating that all experiments were performed successfully."[137] Pineda signed the report issued by the laboratory in Petitioner's case.[138] The report was also signed by Huma Nasir, "Analyst III."[139]

Pineda testified that male DNA was recovered from K.S.'s genitals and gluteal cleft.[140] Pineda testified that Petitioner "and all of his male paternal male [sic] relatives, cannot be excluded as being a donor to the male DNA in the dried secretions and genital swabbing."[141]

Pineda's testimony does not precisely delineate whether she had personal knowledge of the tests performed or the results of the report. However, even if more facts regarding Pineda's actual

---

[134] *Id.*

[135] *Id.* at 610.

[136] *Id.* at 611.

[137] *Id.* at 612.

[138] *Id.* at 614. State Rec., Vol. IV of VIII, Y-STR Test Result Report dated March 31, 2008.

[139] *Id.*

[140] State Rec., Vol. V of VIII, Trial Transcript at 615.

[141] *Id.* at 621

involvement in the testing were developed, the law is unclear as to whether the testimony of a supervisor would violate the Confrontation Clause.[142]

"Alleged violations of the Confrontation Clause [of the Sixth Amendment] . . . are subject to a harmless error analysis."[143] The test for harmless error in a federal *habeas corpus* action brought by a state prisoner is "whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.'"[144] "Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'"[145] The court must examine the entire record "so as to fully consider all the ways in which the complained-of error could have infected the course of the . . . trial."[146]

Even if allowing Pineda to testify violated Petitioner's Sixth Amendment right to confront his accuser, Petitioner cannot established that the testimony resulted in actual prejudice. First, the test performed in this case was not of the type which can conclude with a reasonable degree of certainty that the match at issue excludes all persons other than the defendant; rather, the test was a less conclusive type which instead simply determines whether the match could include the defendant. Therefore, while the DNA test results were favorable to the prosecution, they were not

---

[142] At least one district court analyzing a similar issue has noted that a supervisor's testimony could arguably violate the Confrontation Clause. *Sherrill v. Thaler*, Civ. Action No. 11-338 (S.D. Tex. Mar. 5, 2012). Therefore, the court analyzed the arguable violation of the Confrontation Clause under harmless error review. *Id.*

[143] *United States v. Jimenez*, 464 F.3d 555 (5th Cir. 2006); *see also Lilly v. Virginia*, 527 U.S. 116, 139–40 (1999).

[144] *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. U.S.*, 328 U.S. 750, 776 (1992)).

[145] *Id.* (citing *United States v. Lane*, 474 U.S. 438, 449 (1986)).

[146] *Fratta v. Quarterman*, 586 F.3d 485, 508 (5th Cir. 2008) (quoting *Cupit v. Whitley*, 28 F.3d 532, 538 n. 18 (5th Cir.1994)).

so conclusive as to eliminate the possibility of reasonable doubt. Further, even without the DNA evidence, Petitioner likely would have been convicted because the State presented overwhelming evidence of Petitioner's guilt. K.S., the victim, presented consistent testimony, which was corroborated by Dr. Benton and Omalee Gordon's interview. K.S.'s testimony was also corroborated by F.S. and Ke.S. Accordingly, the Court finds that if the DNA evidence was admitted in violation of the Confrontation Clause such error was harmless. Accordingly, upon *de novo* review and under the deferential standards of review mandated by the AEDPA, the Court finds Petitioner's claim without merit.

### *v. Failure to Request a Jury Instruction Regarding the Mandatory Sentence for Aggravated Rape*

Petitioner objects to the Magistrate Judge's finding that he was not prejudiced by his defense counsel's failure to request a jury instruction regarding the mandatory sentence for aggravated rape. Petitioner contends that the jury would not have convicted him if they knew the conviction carried a mandatory life sentence because the jury asked the court to repeat the responsive verdicts, which he claims indicates the jurors' doubts.

The Louisiana Supreme Court has explained: "When the penalty to be imposed is a mandatory one, our law requires the trial judge to inform the jury, on request of the defendant, of the penalty and to permit defense counsel to argue the penalty to the jury."[147] The Fifth Circuit has noted that trial counsel's decision regarding whether to request a jury instruction is one of trial strategy.[148] The United States Supreme Court has cautioned courts not to second-guess counsel's

---

[147] *State v. Hooks*, 421 So. 2d 880, 886 (La. 1982).

[148] *Anderson v. Collins*, 18 F.3d 1208, 1219–20 (5th Cir. 1994).

decision on matters of trial tactics through the distorting lens of hindsight.[149] Courts are to employ

a strong presumption that counsel's conduct falls within a wide range of reasonable assistance and,

under the circumstances, might be considered sound trial strategy.[150] "A conscious and informed

decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance

of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness."[151]

Moreover, even if counsel's failure to request such an instruction did in fact stem from

deficient performance rather than strategic choice, there is simply no evidence that counsel's failure

to request such an instruction in any way affected the outcome of the trial. Petitioner contends that

the jury would not have convicted him if they knew the conviction carried a mandatory life sentence

because the jury asked the court to repeat the responsive verdicts, which he claims indicates the

jurors' doubts. However, there is no evidence that the jury verdict would have been different if such

a jury instruction were given. Petitioner has not demonstrated that the state court's decision denying

his claim was contrary to, or involved an unreasonable application of clearly established federal law,

as required by the Supreme Court. Accordingly, upon *de novo* review and under the deferential

standards of review mandated by the AEDPA, the Court finds Petitioner's claim without merit.

### vi. Portions of the Report and Recommendation Not Objected To

The Magistrate Judge determined that counsel's failure to move for a mistrial after A.D.'s

testimony did not result in any obvious unfairness to Petitioner. A decision to move for a mistrial

is a strategic one. The Magistrate Judge found that counsel's decision did not rise to a level of

---

[149] *Strickland*, 466 U.S. at 689.

[150] *Id.*

[151] *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983).

unfairness that would permeate the entire trial. Petitioner did not object to this finding. Reviewing for plain error and finding none, the Court adopts the Magistrate Judge's finding that counsel's failure to move for a mistrial does not constitute ineffective assistance of counsel.

The Magistrate Judge also addressed Petitioner's claim that his attorney should not have elicited testimony from F.S. on Petitioner's history of domestic violence against F.S. The Magistrate Judge found that counsel's line of questioning was a reasonable trial strategy. The Magistrate Judge also found that Petitioner could not show that the testimony prejudiced him. Petitioner did not object to this finding. Finding no plain error, the Court adopts the Magistrate Judge's finding that counsel's questioning of F.S. does not constitute ineffective assistance of counsel.

### V. Conclusion

For the reasons stated above,

**IT IS HEREBY ORDERED** that Petitioner's objections are **OVERRULED**;

**IT IS FURTHER ORDERED** that the Court **ADOPTS** the Magistrate Judge's recommendation, and Petitioner Eddie Williams's petition for issuance of a Writ of *Habeas Corpus*, pursuant to 28 U.S.C. § 2254, is **DENIED** and **DISMISSED WITH PREJUDICE**.

**NEW ORLEANS, LOUISIANA**, this 25th day of August, 2014.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**